IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 3:12-CR-159-D(01) |
| | § | |
| DAVID KEVIN LEWIS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

A jury convicted defendant David Kevin Lewis ("Lewis") of one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and 23 counts of securities fraud, in violation of 15 U.S.C. §§ 77q(a) and 77x.[1]  Lewis moves under Fed. R. Crim. P. 29 for a judgment of acquittal and, alternatively, under Rule 33 for a new trial.[2]  Among the questions presented is whether a six- or five-year limitations period applies to his criminal conduct. For the reasons that follow,[3] the court denies the motions.

---

[1]The indictment also charged, and the court instructed the jury, that Lewis could be found guilty of the securities fraud counts as an aider and abettor.  *See* 18 U.S.C. § 2.  The court discusses below Lewis' guilt as an aider and abettor.

[2]Lewis previously moved for a judgment of acquittal at the close of the government's case-in-chief and again after the close of all evidence.  Both motions were denied.  The court granted Lewis' motion to extend the time for filing these post-verdict motions.

[3]Pursuant to Rule 12(d), the court sets forth in this memorandum opinion and order its essential findings.

I

Lewis is the controlling principal of Always Consulting, Inc. ("ACI"), which was chartered in Nevada and authorized to do business in Texas.[4] ACI offered and sold interests in oil and gas well drilling projects to the public. The ACI Rattlesnake Springs Drilling Project ("Rattlesnake Springs Project")—promoted as a plan to drill 20 wells in Osage County, Oklahoma—was the last program offered by ACI. Under the program, ACI offered 35 units of interest at a cost of $100,285.71 per unit for a total of $3,509,999.80. From June 2006 through October 2006, ACI raised $2,539,642.86 from the sale of interests in the project.

Lewis was the Chairman and Director of Field Operations of ACI.[5] Codefendant Bruce Kyle Griffith ("Griffith") was the President and Chief Executive Officer of ACI. Codefendant Thomas Markham ("Markham") was hired as ACI's only geologist. Lewis, Griffith, and Markham were indicted for conspiring to commit securities fraud concerning the Rattlesnake Springs Project, and Lewis and Griffith were indicted for securities fraud. Prior to trial, Griffith pleaded guilty to the conspiracy count and to one count of securities fraud. Markham pleaded guilty to misprision of a felony. The government called Griffith and Markham as witnesses at Lewis' trial.

---

[4]The court recounts the evidence and the inferences therefrom in the light most favorable to the verdict. *See, e.g., United States v. Fuchs*, 467 F.3d 889, 904 (5th Cir. 2006).

[5]Lewis often went by the nickname "DW" during the events in question. *See* Tr. 4B, at 113:21-25.

The Rattlesnake Springs Project was not as promoted.  Lewis purchased lists of "leads" containing names and contact information for potential investors.  He and Griffith provided this information to "fronter" employees, who contacted potential investors using outlines and scripts containing sales pitches, arguments, and talking points—materials designed to make prospective investors believe the project was a potentially profitable investment.  Lewis also provided the fronters with a "Do Not Call" list, entitled "Undercover Regulators," which listed, state by state, the names and contact information of individuals across the country whom Lewis suspected of being state or federal regulators posing as potential investors.  The fronters contacted potential investors and persuaded numerous people to purchase interests in the Rattlesnake Springs Project.  These investors were led to believe that ACI had obtained leases for land covering 20 well sites, that ACI had permits to drill each of the 20 wells, and that the project was ready to begin.[6]  But ACI secured only 12 of the 20 leases, did not obtain any of the necessary drilling permits, and never drilled a single well.  Prospective and actual investors were led to believe that Lewis, Griffith, and Markham had extensive experience in the oil and gas industry.  They were never told that all three had prior felony convictions, including federal convictions.[7]

---

[6]The participation agreement for the Rattlesnake Springs Project stated: "The company agrees to use the amounts tendered to commence site preparation, drilling, testing and completion of the Project Wells."  GX 208, at 2.  ACI's bank records showed that less than 1% of the investor funds for the project were actually used toward the drilling program.

[7]Lewis' prior convictions were for securities fraud, in violation of 15 U.S.C. §§ 77q(a) and 77x, and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371.  Griffith's prior convictions were for bank robbery, in violation of 18 U.S.C. § 2113(a), and conspiracy

Count 1 charged Lewis with conspiracy to commit securities fraud.  The substantive counts, Counts 2-24, incorporated the fraudulent scheme charged in the indictment and charged separate counts of securities fraud (including aiding and abetting culpability) based on each use of a facility of transportation or communication in interstate commerce.  That is, each count referred to the collection of an investor's check payable to the Rattlesnake Springs Project.  Each of these checks was either deposited into the Rattlesnake Springs Project account directly or into the ACI operating account at JP Morgan Chase Bank, N.A. ("JP Morgan Chase"), and each was connected with a separate offer and sale of an interest in the Rattlesnake Springs Project.[8]

Lewis moves for a post-verdict judgment of acquittal and, alternatively, for a new trial.  The government opposes the motions.[9]

---

to possess counterfeit Federal Reserve notes, in violation of 18 U.S.C. § 371.  Griffith had also been convicted of theft under state law.  Markham's prior conviction was for mail fraud, in violation of 18 U.S.C. § 1341.

[8]For example, Count 2 refers to a check in the amount of $50,142.86 signed by an investor with the surname "Amen" and dated June 13, 2006.

[9]On November 7, 2013 Lewis filed a response to the government's response to his motion in which he states:

> The Government is correct in pointing out that Toby Engleman did not state that the prospectus (GX-104), was generated by Co-Defendant Griffith.  He said the document was produced by Co-Defendant Markham.  3R84.

Treating the response as a reply brief, the court grants Lewis leave to file it.  *See* N.D. Tex. Crim. R. 47.1(f) ("Reply briefs may not be filed unless the moving party requests, and the presiding judge grants, leave to do so.").

II

The court turns first to Lewis' motion for judgment of acquittal.

A

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (internal quotation marks omitted)). "When the defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The evidence is sufficient to support the conviction if, when viewing the evidence and any valid inferences from the perspective favorable to the verdict, 'a rational juror could have found [the] defendant[] guilty beyond a reasonable doubt.'" *United States v. Adams*, 338 Fed. Appx. 417, 420 (5th Cir. 2009) (per curiam) (quoting *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999)). "The jury makes credibility determinations and can find guilt even when some 'reasonable hypothesis of innocence' could be said to exist." *Id.* (quoting *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007)). "Accepting or rejecting [the testimony of witnesses] [is a] matter[] for the evaluation of the jurors. It is the jury's unique role to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts." *Id.* (citing *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir.

1998)).  "'The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence.'"  *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999) (quoting *United States v. Burton*, 126 F.3d 666, 669-70 (5th Cir. 1997)).

B

Count 1 charged Lewis with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371.[10]  To prove a conspiracy under § 371, the government must show: "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy."  *United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010) (citing *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001); *United States v. Dadi*, 235 F.3d 945, 950 (5th Cir. 2000)).  Lewis argues that the evidence does not support his conviction for conspiracy because the record lacks any evidence of an agreement.  The government maintains that a conspiracy conviction does not require proof of a formal agreement between the conspirators and that the evidence was sufficient for a rational trier of fact to find the essential elements of a conspiracy beyond a reasonable doubt.

The court holds that a rational juror could have found Lewis guilty of conspiracy beyond a reasonable doubt.  "No formal agreement between the parties is essential to the

---

[10]The underlying substantive offenses for the conspiracy charged are violations of 15 U.S.C. §§ 77q(a) and 77x.

formation of a conspiracy, for the agreement may be shown by concerted action, all the parties working together understandingly with a single design for the accomplishment of a common purpose." *United States v. Mendez*, 496 F.2d 128, 130 (5th Cir. 1974); *see also United States v. Klein*, 560 F.2d 1236, 1243 (5th Cir. 1977).  A rational jury could have found that Lewis engaged in concerted action, according to a single design, for accomplishing the common purpose of the fraudulent scheme charged in the indictment.  It could have found that he committed several of the overt acts charged,[11] including that he wrote the offering memorandum; that he and Griffith opened a bank account with JP Morgan Chase; that he met with prospective investors to promote the Rattlesnake Springs Project; and that he had telephone conversations with individual investors.  In addition to Lewis' commission of various overt acts, the jury could rationally have found that Lewis was in charge of the day-to-day activities in ACI's office; that he had regular meetings with sales representatives, including the fronters; and that he reviewed and approved the participation agreements, even though Griffith signed them.  This is not a case in which the evidence showed nothing more than mere association between Lewis and his coconspirators.  *Cf. Klein*, 560 F.2d at 1243 ("Mere association with conspirators is not enough to establish participation in the conspiracy.").  A rational jury could have found from the evidence that Lewis engaged in concerted action, according to a single design, for accomplishing the common purpose of the fraudulent scheme charged in the indictment.

---

[11]It is not necessary, of course, that Lewis himself have committed an overt act.

Viewing the evidence and the valid inferences from the perspective favorable to the verdict, the court holds that a rational jury could have found all the essential elements of the conspiracy count beyond a reasonable doubt.  Lewis' motion is denied with respect to Count 1.

C

The court now turns to the substantive counts of securities fraud.[12]

1

Counts 2-24 charged Lewis with securities fraud, in violation of 15 U.S.C. §§ 77q(a) and 77x.  These counts also charged that Lewis was guilty as an aider and abettor.  *See* 18 U.S.C. § 2.  15 U.S.C. § 77q(a) provides, in pertinent part:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of

---

[12]Lewis' motion can reasonably be read to challenge the sufficiency of the evidence only with respect to Counts 3-4, 6, 8-15, 17-18, 20-22, and 24, but not as to Counts 2, 5, 7, 16, 19, and 23.  *See* D. Mot. 20 ("The evidence shows that, except for Counts 2, 5, 7, 16, 19, and 23, there is no evidence from the investors that they were defrauded in any way.") & 21 ("In fact, there is a total failure of proof on all substantive counts, Save Counts: 2 (Amen[]); [5] (Gunderman[n]); 7 (Parry); 16 (Pedigo); 19 (Gosney); and 23 (Pedigo).  In none of the other counts did any witness testify that the investors were defrauded in any way.").  But because the court holds that the evidence is sufficient to support Lewis' convictions on all substantive counts, the court will assume that each one is the subject of Lewis' motion.

> the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).  15 U.S.C. § 77x makes it a criminal offense to "willfully violate[]" § 77q(a).  *Id.* § 77x.

To prove that Lewis aided and abetted, the government must prove "that the . . . elements of the substantive offense occurred and that [he] associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed."  *United States v. Jimenez*, 509 F.3d 682, 689 (5th Cir. 2007). "Moreover, to aid and abet, a defendant must share in the intent to commit the offense as well as play an active role in its commission."  *United States v. Lombardi*, 138 F.3d 559, 561 (5th Cir. 1998).  Aiding and abetting may be established through circumstantial evidence.  *See, e.g., Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) ("There is no direct evidence tying Moncharsh to the six false invoices involved in the substantive counts.  Yet there is circumstantial evidence wholly adequate to support the finding of the jury that Moncharsh aided and abetted in the commission of those offenses.").

2

Lewis first argues that there is no evidence that the investors were actually defrauded.

He maintains that, for counts not supported by a specific investor's testimony,[13] "[t]he record is silent as to what representations were made, what was omitted, what disclaimers were made[,] or how the Defendant aided and abetted anyone in furtherance of these transactions." D. Mot. 21.  The government responds that it did not have to prove that any investor was actually defrauded, making testimony from each individual investor unnecessary.  It merely had to prove that false or misleading statements were knowingly and willfully made to potential investors with the intent to defraud.

The court holds that a rational jury could have found all the essential elements of the securities fraud counts beyond a reasonable doubt.  To prove fraudulent intent under § 77q(a), the government does not have to prove that any individual was actually defrauded. *Cf. United States v. Porter*, 441 F.2d 1204, 1210 (8th Cir. 1971) (addressing in context, *inter alia*, of prosecution under 15 U.S.C. § 77q(a) whether proof was sufficient to prove intent to defraud).  The government called as witnesses some, but not all, of the individuals who invested in the Rattlesnake Springs Project, establishing that at least some investors *were* actually defrauded.  And for those investors who did not testify, the government adduced evidence that would have enabled a rational jury to find that they received the same or substantially similar information as those who did testify—namely, the Rattlesnake Springs Project offering memorandum, the participation agreement, and the guarantee of

---

[13]This distinction explains Lewis' apparent exclusion of Counts 2, 5, 7, 16, 19, and 23 from the scope of his motion.  The individual investors who were the subject of these counts testified at trial.

satisfaction—all of which contained false or misleading statements designed to elicit an investment in the Rattlesnake Springs Project.   Moreover, the government introduced evidence that Lewis interacted with some of the non-testifying investors, including Baskin (Count 9), Schroeder (Count 10), and Groblebe (Count 13).   And each count was supported by a separate check made out to the Rattlesnake Springs Project and deposited either directly into the Rattlesnake Springs Project account or into the ACI operating account at JP Morgan Chase.   Each of these checks was connected to a separate offer and sale of an interest in the Rattlesnake Springs Project.[14]   This and other evidence presented at trial were sufficient to enable a rational jury to find beyond a reasonable doubt that the government specifically proved that Lewis acted with intent to defraud.

3

Lewis next contends that there is no evidence linking him to investors.   He maintains that this evidence is lacking because Griffith testified that he—not Lewis—signed the participation agreements, Lewis' name does not appear on any of the pertinent guarantees or participation agreements, and the government offered no other proof linking Lewis to these particular investors.   The government relies on the evidence discussed above, and it argues that such evidence is sufficient to support the verdict.

The court holds that a rational jury could have found beyond a reasonable doubt that

---

[14]ACI's investor files included the signature page of each participation agreement signed by each investor, the check sent to ACI by each investor, and the written guaranty of satisfaction from ACI.  In some cases, the files included the lead sheet with the investor's name and contact information.

Lewis was linked to specific investors.  In addition to the evidence already discussed, the government presented proof that, although Griffith signed most of the checks, he needed Lewis' prior approval; that Lewis directly sold units to some of the investors; and that Lewis used Griffith as the front man for ACI but controlled most of its operations.  Moreover, Lewis was charged in Counts 2-24 as an aider and abettor.  Even if a rational jury could not have directly linked Lewis to a particular investor, it could have found him guilty beyond a reasonable doubt on the basis that he aided and abetted the commission of each such count.

Viewing the evidence in the light most favorable to the prosecution, the court holds that a rational trier of fact could have found beyond a reasonable doubt that Lewis was guilty of the securities fraud offenses charged in Counts 2-24, either as a principal or as an aider and abettor.

III

Lewis moves in the alternative for a new trial.

A

On a defendant's motion, "[a] court may grant a new trial if it is required in the interests of justice."  *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (citing Rule 33(a)).  Whether to grant a new trial is a matter within the district court's discretion.  *See United States v. Martin*, 431 F.3d 846, 850 (5th Cir. 2005).  The court "may weigh the evidence and assess the credibility of the witnesses in considering the motion."  *Arnold*, 416 F.3d at 360 (citing *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)).  "Although a district court has broad discretion, it is not limitless, and it 'may not reweigh the

- 12 -

evidence and set aside the verdict simply because it feels some other result would be more reasonable.'"  *Id.* (quoting *Robertson*, 110 F.3d at 1118).  "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."  *Id.* (quoting *Robertson*, 110 F.3d at 1118) (internal quotation marks omitted).

B

Apart from stating the standard for a new trial under Rule 33, Lewis does not specify any arguments for granting a new trial other than to refer to the ones he makes in support of his Rule 29 motion and to urge the court to "eliminate the testimony" of codefendant Griffith on the basis that the testimony was "thoroughly impeached."  D. Mot. 21-22.

Concerning the arguments that Lewis incorporates from his motion for judgment of acquittal, the court concludes that the evidence does not preponderate heavily against the verdict.

The remaining ground is Lewis' contention about Griffith's testimony.  Lewis argues that Griffith's testimony was thoroughly impeached because he was a drug user who had falsified drug tests, and a felon with a record for bank robbery, counterfeiting, theft, and fraud.  Lewis posits that Griffith bartered his testimony in exchange for a lesser sentence and that his testimony was entirely discredited.  The government responds that Griffith's testimony was corroborated by other evidence as to all material facts.

The court declines to grant a new trial on this ground.[15]  Although the court can weigh

---

[15]The court addresses this argument as one in support of Lewis' Rule 33 motion. Lewis' arguments in his brief are not clearly separated between those that support his Rule

the evidence and assess the credibility of witnesses when considering a motion for new trial, "the court may not grant the motion unless the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006) (citing *Arnold*, 416 F.3d at 360). Lewis has not made the necessary showing. The evidence adduced at trial included proof that corroborated much of Griffith's testimony: Lewis formed ACI; Lewis wrote the offering memorandum; any action by ACI required Lewis' approval; Lewis obtained the list of leads; Lewis called internal meetings; and Lewis sent out materials about the Rattlesnake Springs Project. A rational jury could have believed Griffith's testimony because much of the testimony at issue was corroborated by extrinsic evidence.

Accordingly, the court declines to grant Lewis' alternative motion for a new trial on the ground that Griffith's testimony was "thoroughly impeached."

## IV

The court now turns to Lewis' argument concerning the statute of limitations.

## A

The underlying conduct for which Lewis was convicted in Counts 2-24 occurred between June 13 and October 30, 2006. At that time, the statute of limitations for securities

---

29 motion and those that support his Rule 33 motion. To the extent that Lewis also asks the court to grant his Rule 29 motion on the ground that Lewis' testimony was impeached, the court declines to do so. *See United States v. Castaneda*, ___ Fed. Appx. ___, 2013 WL 6234579, at *3 (5th Cir. 2013) (per curiam); *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001); *United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999).

fraud and conspiracy to commit securities fraud was five years.  *See* 18 U.S.C. § 3282 (establishing general five-year limitations period for noncapital criminal offenses).  In 2010, as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203, tit. X, § 1079A(b)(1), 124 Stat. 2079 (2010), Congress extended the statute of limitations for securities fraud and conspiracy to commit securities fraud from five to six years.  *See* 18 U.S.C. § 3301.  This change took effect on July 22, 2010.  *See* Pub. L. No. 111-203, § 4, 124 Stat. 1390.  As of July 22, 2010, the five-year limitations period for Lewis' conduct committed between June 13 and October 30, 2006 had not expired.  But the grand jury did not hand up the indictment in this case until June 5, 2012—more than five years after the commission of the offenses, albeit within the six-year limitations period established by the Dodd-Frank Act.

Lewis argues that the six-year limitations period does not apply and the charges of which he was convicted are time-barred because the conduct for which he was charged occurred more than five years before the indictment was returned.  The government maintains that Lewis waived this argument by not raising it before or during trial, and, alternatively, that the six-year limitations period applies because the Dodd-Frank Act took effect before the former five-year limitations period expired as to the conduct in question.

B

The court first considers whether Lewis has waived this argument.  Relying on *United States v. Arky*, 938 F.2d 579 (5th Cir. 1991), the government contends that Lewis waived his limitations argument by failing to raise it before or during trial.  In *Arky* the Fifth Circuit

- 15 -

held that a defendant's failure to "raise and develop his limitations defenses at trial . . . precluded [him] from raising them now." *Id.* at 582. Because Lewis is not entitled to relief on the merits, the court will assume *arguendo* that *Arky* is inapposite because the defendant asserted a limitations defense that relied on disputed facts.

In *Arky* the defendant asserted that the government failed to show that any overt act within the scope of the conspiracy had taken place during the limitations period. *Id.* at 581. This is the type of disputed fact that the government would prove to a jury, and the defendant raised the argument for the first time on appeal. But Lewis' limitations defense does not rely on a disputed fact. He does not contest the allegations of the indictment or (for purposes of this argument) the facts proved at trial; rather, he challenges the meaning and application of a statute, which is a question of law for the court to decide. *Cf. United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993) ("Because the Defendants' challenge is not to the existence of the facts contained in the indictment, but whether those facts demonstrate a failure timely to prosecute their cases, resolution of this issue turns on questions of law which are reviewed de novo."). And, unlike in *Arky*, Lewis did not wait to raise the issue for the first time on appeal. The court therefore assumes *arguendo* that Lewis did not waive his limitations argument by failing to raise it before or during trial.

C

The court now turns to the merits of Lewis' argument. In support of his contention that the five-year limitations period applies and bars his prosecution, Lewis relies on *In re Enterprise Mortgage Acceptance Co., LLC, Securities Litigation*, 295 F.Supp.2d 307

- 16 -

(S.D.N.Y. 2003).  That reliance is misplaced.  In that case the question was whether the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Act"), 15 U.S.C. § 7201, *et seq.*, which extended the limitations period for private causes of action under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, revived previously time-barred claims.  *In re Enterprise*, 295 F.Supp.2d at 309.  The court held that it did not and granted the defendants' motion to dismiss.  *Id.* at 312-17.  The court emphasized that, as of the Sarbanes-Oxley Act's effective date, the plaintiffs' claims were *already* time-barred.  *Id.* at 312.  Because Congress did not unambiguously provide that the new limitations period would apply retroactively to revive time-barred claims, the court concluded that the extended limitations period did not apply and that the action was therefore time-barred.  *Id.* at 312-17.

Citing *In re Enterprise*, Lewis argues "that the increase to six years did not revive his time barred offenses."  D. Mot. 22-23.  But Lewis overlooks a critical distinction: at the time the Dodd-Frank Act took effect on July 22, 2010, the five-year limitations period that applied to Lewis' conduct had *not* run.  The first security at issue in the indictment was purchased on June 13, 2006.  The extended statute of limitations took effect fewer than five years after that first sale.  Consequently, the Dodd-Frank Act did not revive a criminal claim for which prosecution was already time-barred.  Instead, it simply extended an unexpired limitations period that otherwise would have expired before the indictment was returned.

Lewis suggests that there is a possible retroactivity problem[16] with applying the six-

---

[16]Although Lewis does not cite a case other than *In re Enterprise*, he states: "Defendant has found [no] authority as to whether or not Congress intended the cha[n]ge to

year limitations period because the underlying conduct occurred more than five years before the indictment was returned.  The government cites *United States v. Brechtel*, 997 F.2d 1108 (5th Cir. 1993) (per curiam), in support of its position.  That case does not address the precise issue presented here.  In *Brechtel* the defendant was convicted of unlawful participation in benefits from savings and loans transactions, in violation of 18 U.S.C. § 1006 (and under § 2 as an aider and abettor).  *Id.* at 1110.  At the time the defendant engaged in the underlying conduct for which he was convicted, the relevant limitations period was five years.  *Id.* at 1112.  Before the grand jury returned the indictment, Congress extended the limitations period from five to ten years.[17]  *Id.* at 1113 & n.10.  The defendant argued that applying the ten-year limitations period to his case violated the Ex Post Facto Clause of Article I, § 9 of the Constitution.  *Id.* at 1112-13.  The Fifth Circuit affirmed the conviction, concluding that there was no violation of the Ex Post Facto Clause because the statute did not withdraw a defense related to the definition of the crime, did not criminalize previously innocent conduct, and did not enhance the punishment for an existing crime.  *Id.* at 1113.

*Brechtel* does not address the precise issue presented here because, in that case, Congress "expressly indicated that § 3293 . . . would apply to offenses committed before and

---

apply retroactively.  In order to preserve error Lewis now urges that the increase to six years did not revive his time barred offenses."  D. Mot. 22-23.

[17]*See* 18 U.S.C. § 3293 (providing, in pertinent part, that "[n]o person shall be prosecuted, tried, or punished for a violation of, or a conspiracy to violate . . . section . . . 1006 . . . unless the indictment is returned or the information is filed within 10 years after the commission of the offense").

for which the limitations period had not run as of its enactment." *Id.* at 1113 n.10 (citing the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, § 961(l)(3), 103 Stat. 501 (1989)).  By contrast, the effective-date provision governing 18 U.S.C. § 3301 merely states: "Except as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act."[18]  Pub. L. No. 111-203, § 4, 124 Stat. 1390.  Unlike the statute in *Brechtel*, Congress did not expressly clarify whether the extended limitations period applies to offenses committed before and for which the prior limitations period had not run as of its enactment.  Accordingly, *Brechtel* suggests that there would be no Ex Post Facto Clause problem with applying the six-year limitations period in this case, but it does not address the question whether Congress intended the six-year limitations period to apply to conduct occurring before the statute's effective date (i.e., pre-amendment conduct).  In other words, *Brechtel* provides guidance on the *constitutional question* of whether there is a violation of the Ex Post Facto Clause; it does not guide the *statutory question* of which limitations period applies in this case.

Lewis posits that, absent an express instruction by Congress, the court cannot apply the six-year limitations period to conduct that occurred before the Dodd-Frank Act's effective date.  The court disagrees.  Although the Fifth Circuit has not addressed this

---

[18]The date of enactment was July 21, 2010, and since 18 U.S.C. § 3301 does not specifically provide for a different effective date, the pertinent effective date here is July 22, 2010.

argument in the context of 18 U.S.C. § 3301, it has addressed the issue in other contexts.  For example, it addressed the question in a civil case[19] arising under the Age Discrimination in Employment Act ("ADEA").  *See St. Louis v. Tex. Worker's Comp. Comm'n*, 65 F.3d 43 (5th Cir. 1995).  In *St. Louis* the plaintiff brought a discrimination action under ADEA.  *Id.* at 44.  When the allegedly discriminatory conduct occurred in May 1991, the relevant limitations period was two years.  *Id.* at 45.  After the conduct occurred, but before the plaintiff filed suit, Congress altered the limitations period to require that a plaintiff bring the action within 90 days after receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").  *Id.*  The plaintiff filed his lawsuit in 1993—within two years of the allegedly discriminatory conduct but more than 90 days after receiving notice from the EEOC.  *Id.* at 44.  The district court dismissed the lawsuit for failure to comply with the shorter limitations period.  *Id.*  On appeal, the plaintiff argued that the applicable statute of limitations was not the one in effect when the complaint was filed but the one in effect when the claim accrued.  *Id.* at 45.  The Fifth Circuit rejected the argument and held that the 90-day statute of limitations applied to claims filed after the 1991 amendment became effective,

---

[19]The Fifth Circuit addressed the question in a criminal case in *United States v. Seale*, 542 F.3d 1033 (5th Cir. 2008), *reh'g en banc*, 570 F.3d 650 (5th Cir. 2009) (vacating panel opinion by evenly-divided court), which involved amendments to the federal kidnaping statute.  But the panel opinion in *Seale* does not have precedential authority, *see id.* at 651 (DeMoss, J., dissenting), and the case is arguably distinguishable on the ground that special problems "arise when both capital and non-capital versions of the federal kidnaping statute are potentially applicable," *Seale*, 542 F.3d at 1035.  That said, the panel opinion in *Seale* is consistent with the court's conclusion here.  *See id.* at 1038 ("Based on these authorities, we conclude that changes to criminal statutes of limitation presumptively apply retroactively to pre-amendment offenses, absent *Ex Post Facto* concerns that are not present here.").

regardless when the claim accrued.  *Id.*  Although the court noted that its conclusion was supported by the retroactivity analysis of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), it concluded that *Landgraf* was not controlling.  *See id.* at 45-46.  The court explained:

> [A]lthough the defendant frames the issue as one of retroactivity, the issue is not technically one of retroactivity, where a change in the law overturns a judicial adjudication of rights that has already become final.  In this case, the statute of limitations is applied to conduct that occurred after the statute's enactment—the plaintiff's filing of the complaint—not to the allegedly discriminatory acts of the defendant.  The only issue is which law to apply to the plaintiff's acts.

*Id.* at 46 (footnote omitted).  Other courts have reached the same conclusion.  *See, e.g., Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 889-91 (2d Cir. 1995); *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414 & n.7 (3d Cir. 2010).

The reasoning of the Fifth Circuit in *St. Louis* does not appear limited to civil statutes of limitations.  Other courts have taken the same approach in criminal cases.  For example, in *United States v. Leo Sure Chief*, 438 F.3d 920 (9th Cir. 2006), the court considered the issue as it relates to 18 U.S.C. § 3283.  *Id.* at 922-25.  Much like Congress' decision to enact a separate statute of limitations for securities fraud offenses, Congress enacted a separate statute of limitations extending the limitations period for the prosecution of crimes involving sexual abuse against children.[20]  *See id.* at 922.  The 2003 version of the statute provided that

---

[20]In 1994 the text of the statute was re-codified at 18 U.S.C. § 3283 and amended in 2003.  *Leo Sure Chief*, 438 F.3d at 922.

the government can prosecute suspected child abusers at any time "during the life of the child."[21]  18 U.S.C. § 3283, Pub. L. No. 108-21, tit. II, § 202, 117 Stat. 660 (2003).  The defendant, who had been convicted of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153 and 2241(a), argued that the indictment was barred by the five-year limitations period of 18 U.S.C. § 3282 because the conduct occurred seven years before the indictment was filed.  *Leo Sure Chief*, 438 F.3d at 922.  He argued that the five-year limitations period of 18 U.S.C. § 3282 applied rather than the much longer limitations period of 18 U.S.C. § 3283 because § 3283 did not have an explicit savings clause stating that the extended limitations period would apply retroactively to pre-amendment conduct.  *Id.* at 923.  The Ninth Circuit rejected this argument, reasoning that Congress intended to extend the limitations period and that there was no retroactivity problem because the amendment did not revive a previously time-barred claim.  *See id.* at 923-25.  Courts have generally followed this approach and concluded that there is no problem with applying an extended limitations period to conduct that occurred pre-amendment, so long as prosecution of the conduct was not time-barred by the time of the amendment.  *See, e.g., United States v. Jeffries*, 405 F.3d 682, 683-85 (8th Cir. 2005) (applying extended limitations period created by 18 U.S.C. § 3283 to pre-amendment conduct); *United States v. Chandler*, 66 F.3d 1460, 1467-68 (8th Cir. 1995) (applying extended limitations period created by 18 U.S.C. § 3293 to pre-

---

[21]The statute has since been revised and now provides that the government can prosecute suspected child abusers "during the life of the child, or for ten years after the offense, whichever is longer."  18 U.S.C. § 3283, Pub. L. No. 109-162, tit. XI, § 1182(c), 119 Stat. 3126 (2006).

amendment conduct); *United States v. Mayfield*, 999 F.2d 1497, 1501-02 (11th Cir. 1993) (same); *United States v. Coleman*, 2010 WL 750101, at *4-5 (E.D. Mo. Mar. 2, 2010) (collecting cases).

The government is not relying on the Dodd-Frank Act to revive a previously time-barred claim. The five-year limitations period had not expired as to Lewis' criminal conduct on the date the Dodd-Frank Act took effect to enlarge the limitations period to six years. This is a critical distinction. When claims are already time-barred at the time the limitations period is enlarged, a clear statement from Congress *is* required before a court will apply an amendment retroactively to revive the claim. *See, e.g., Singleton v. Clash*, ___ F.Supp.2d ___, 2013 WL 3285096, at *10 (S.D.N.Y. July 1, 2013). But a clear statement from Congress is generally not required when an amendment is applied to pre-amendment conduct and the amendment merely extends the limitations period for unexpired claims but does not revive expired claims. *See Landgraf*, 511 U.S. at 273 ("Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations."); *accord Stogner v. California*, 539 U.S. 607, 613-14, 618 (2003) (distinguishing cases where courts have upheld extensions of unexpired statutes of limitations from those where limitations periods have expired). Lewis does not cite any authority indicating that Congress did not intend for the extended limitations period of the Dodd-Frank Act to apply to conduct that occurred before its effective date, and the court has found none. The court therefore holds that the six-year limitations period applies. Because there is no Ex Post Facto Clause problem with applying the six-year limitations period, the court concludes

that Lewis' convictions on the charges in question are not time-barred.

* * *

For the reasons explained, the court denies Lewis' motion for judgment of acquittal and alternative motion for new trial.

**SO ORDERED.**

December 9, 2013.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE